Good afternoon. The United States Court of Appeals for the Ninth Circuit is now in session. Good afternoon. As you can now see, I'm here with Judge Desai and Judge Schroeder in Phoenix, and this is the time set for argument in the United Talent Agency, LLC against Markel American Insurance Company. I see we have both counsel. Counsel for appellate, you may proceed. Thank you, Your Honors, and good afternoon. May it please the court, Michael Garrett on behalf of United Talent Agency, LLC, at this time and with the court's permission, I would like to reserve three minutes for rebuttal. You may just keep an eye on your clock. Will do. Thank you. Your several times now, and while there are several areas of dispute, I would like to start with what I think is the heart of the dispute, at least with respect to Section 533. California law is clear that Section 533 precludes indemnification for a loss caused by the willful act of the insured. But the California Supreme Court has also made it clear, and I'm quoting from Gray versus Zurich Insurance Company, that quote, Section 533 precludes only indemnification of willful conduct and not the defense of an action in which such conduct is alleged. And here, the error that the District Court and Markel make is to suggest that the distinction between the duty to advance defense costs and the duty to defend somehow changes this analysis, such that there's really, in their view, no distinction between indemnity and the payment of defense costs. And under that argument, Section 533 precludes coverage for everything, defense costs and indemnity. And the problem with that view is that the duty to advance defense costs is a distinct promise. It's a promise that is separate and apart from the promise to ultimately indemnify for a settlement or a judgment. And the policy is clear on this. It contains a separate provision, not just the loss definition that requires payment of claim expenses, a separate provision that requires Markel to, quote, advance covered claim expenses on a current basis. And that advancement occurs while the actions are pending prior to any payment of a judgment or a settlement. But for that to apply, don't the expenses have to be claim expenses? Correct. Okay, but so then, but doesn't that sort of get you back to the question of what is the scope of the duty to indemnify? I guess another way of asking the question is, how does that provide a basis for coverage that extends beyond the scope of the duty to indemnify? Yeah, that's an issue that has been addressed in two ways, Your Honor. First, that's an issue that's been addressed by Downey Ventures. A similar argument was made there, which is that, well, if Section 533 precludes indemnification for the alleged conduct, in that case, malicious prosecution, then how can there be any duty to pay defense costs, or in that case, duty to defend? And the court said, no, that's a separate, distinct promise. If you have a reasonable expectation that you'll be provided a defense obligation with respect to, in that case, malicious prosecution, then enforcing that defense funding commitment does no malice to Section 533. It doesn't violate the public policy behind Section 533. So not only is there the public policy rationale, but the policy itself explicitly promises to pay defense costs for uninsurable matters. And it does this in the definition of loss. It excludes from the definition of loss, quote, matters uninsurable under the law, but then states this does not exclude claim expenses with respect to such matters. So in other words, the policy expressly says, or promises to pay claim expenses for matters that are uninsurable, like those excluded by Section 533, but not any other form of loss. And this is important because that policy structure, providing the payment of defense expenses for matters that are otherwise uninsurable, is consistent with decades of California jurisprudence. That's Downey, B&E, and Gray. And the only distinction between the rationales that have implied in all of those cases, in this case, is the distinction between the duty to defend and the duty to advance defense costs. And we cited the decision in Brayden Partners versus Twin City Fire Insurance Company in our case, but in that case, the court correctly found that the duty to advance creates, quote, a reasonable expectation on the part of the insured. And as a result, an insurer is still required to fulfill its defense funding commitment, regardless of whether Section 533 prohibits indemnification. And so that conclusion, again, is supported by the public policy, and it's also supported by the explicit terms of the policy here, which says we will pay claim expenses for otherwise uninsurable. Markell's only real response to this structure is to say that it only has a duty to advance, quote, unquote, covered claim expenses, and the UTA has not proven that coverage exists. And there are two problems with that argument. One is dispensed with quickly, which is that Markell does not dispute the applicability of the policies and insurance agreement. That is the extent of UTA's burden. Markell must establish that an exception or exclusion applies. The district court correctly found that that was the case, and we would submit that Markell has not done so. But the second fundamental problem with the reliance on the word, quote, covered claim expenses is, again, that the policy tells us that claim expenses incurred for uninsurable matters are covered defense costs. Now, I go back to, on that point, the foundational cases, Gray, B&E, Downey, all of which have been cited by the parties, which stand for the basic proposition that the terms of the policy would lead an insurer to reasonably expect a defense of the type of claim asserted that a defense may be required, even though there can legally be no duty to identify. In that case, there is coverage for defense expenses here for uninsurable matters. And frankly, that's, if Section 533 does not apply to the duty to advance defense costs, that's dispositive on Markell's motion, because they would not be entitled to summary judgment if the duty to advance defense costs is not precluded by Section 533, which we submit is the case. In addition to the duty defense expense costs, there's a duty to advance defense costs. There's additional reasons why Section 533 does not preclude coverage here. Section 533 only does not apply unless the plaintiff, in order to prevail on their cause of action, can show the specific intent to injure or that the conduct is inherently harmful. And we've detailed why the causes of action in the underlying lawsuits do not require proof of subjective intent. And so we would submit that it's possible that a jury could have awarded damages without such a finding. There was no determination here by a jury. It's an unproven claim. And in response to that, Markell primarily points to rhetoric in the complaints about, and they frequently quote, a lawless midnight raid, etc. But I think the factual allegations are not the barometer for whether claims are precluded by Section 533. And that's this court's holding Unified Western Grocers versus Twin City Fire Insurance Company, which I think is instructive on this point. There, as was the case here, the court needed to determine whether an unproven claim, without any development of evidence, is covered by an insurance policy in light of Section 533. And the court said, we are reluctant to frame coverage based on the allegations in the underlying complaint. And that's, the reasoning is simple. The third party complainant, quote, who may overstate the claims against the insured should not be the arbiter of the policy's coverage. Even if we don't, I mean, assuming you're right about that and that we don't look at the specific factual allegations and we just look sort of in a categorical way at what the claims are, you know, aren't claims for things like intentional interference with prospective economic advantage and, you know, hitting and running breach of fiduciary duty, those kinds of things seem like they necessarily involve willful conduct, don't they? I think they, as we laid out, I think they involve a knowledge of conduct, but not necessarily the specific motivation or specific intent to cause injury that is necessary in order to trigger Section 533. But in addition to that, and I think this again goes back to Unified Western Grocers, when you're, even when, and the court said, even when you're faced with allegations of a broad fraudulent scheme and conspiracy, the application of Section 533 made on summary judgment without evidence of the insurer's actual conduct, which is the case here. There's no evidence of actual conduct, just allegations. Then the application of Section 533 should only consider whether any asserted claim may allow for liability based on alleged conduct that has a lower degree of culpability. Again, that's Unified Western Grocers. And here there's no evidence of UTA's actual conduct. And even under the district court's reading, multiple causes of action, the duty of loyalty, fiduciary duty, don't involve willful conduct. So I want to take a step back a little bit in terms of how this, in our view, how this should properly be analyzed. There's the initial question is whether or not the duty to advance defense costs is even implicated by Section 533. Whether Section 533 can even preclude the duty to advance defense costs. That's separate and apart from an analysis of whether or not the causes of action involve willful conduct. Another separate argument before you get to analyzing each individual cause of action is the applicability of Section 533 to UTA itself. And we would submit that Section 533 does not apply to UTA the entity because Markel has not established that UTA's board of directors ratified the alleged conduct. So only then, only after jumping through those two steps, do we actually get to whether or not each individual cause of action involves willful conduct. And we submit that when there's no evidence of actual conduct, then the question is whether or not there is a possibility for a lower degree of culpability to be proved. And in this case, we would submit that that's the case, which again would defeat Markel's motion for summary judgment. Excuse me. This is Judge Schroeder, just quickly. But do I understand your threshold position to be that even if this is willful conduct excluded from coverage, that you are nevertheless entitled to the advancement of these costs? Absolutely, Your Honor. And that's critical. And I thank you for putting a fine point on that. And so what you're trying to do now is to claim that the insurer owes you those costs and you get to keep them? Yes, Your Honor. Yes, Your Honor, in the first instance. I mean, arguably they may raise allocation arguments, but none of that is before the court today or on the record. And you don't have to pay them back even if we were to say there's no coverage? Not on the duty to advance defense costs, no. You're down to three questions? I would. Thank you. You may. Is it Mr. Perlos? Yes, Your Honor. I have the privilege of representing Markel American Insurance Company in this matter. There's an expression in politics that is recently used, which is elections have consequences. And the election that UTA made in this case has consequences which UTA is seeking to avoid. When UTA purchased the policy, they had an option to purchase either a duty to defend option or an indemnity option. What they're now trying to do is transform the duty, the indemnity option into a duty to defend option. And they simply can't do that. What's happened here, and in some measure, UTA is seeking to ignore the earlier ruling of this in this case relative to the broad professional services exclusion and the 533 exclusion. If this were a duty to defend policy, theoretically, if there were allegations that could in any way encompass a claim covered by the policy, we'd have an obligation to defend. That obligation would permit Markel American to appoint defense counsel to control the defense and limit what UTA could do in connection with the retention of its counsel and the manner in which the case was defended. Now, having selected an indemnity policy, they seek to have all the benefit of a duty to defend policy, and that's simply not appropriate. There are a few things that deal with the 533 aspect of this case. Number one, if you look at Downey Venture, Downey Venture isn't as broadly applicable as they contend. Downey Venture recognized that coverage for defense was only available because the policy explicitly said that it would cover malicious prosecution cases, and if the policy hadn't said that, there would have been no duty to defend because the only reason they had it with the malicious prosecution specifically identified under coverage was if they didn't have it, the policy would be illusory. There would be a statement of specific coverage, and yet the insurer would be contending that there wasn't any. The court went further and said, one of the parties said, well, what if we said this was a duty to defend aspect of the case where we simply took what we would expect to have been the defense costs and move them into a settlement posture, and therefore, there would have been coverage for everything, and the court of appeals said, no, you can't do that. You can't make it some illusory payment calling it a defense cost payment and then transform it into a legitimate covered settlement, but there is another case, which is UREC, and UREC says unless there's a specific identification of a duty to defend a particular matter, there is no duty to defend under 533. It simply doesn't exist. Moving on to another aspect of the case, they try to say, well, there are a number of claims that are not intentional, not inherently harmful, and therefore, there would be a duty to advance defense costs, which, by the way, simply says there's an advancement of defense costs solely for covered loss, not for potentially causes of action. They arguably contain covered loss, and here, that isn't even the case because the policy in its first couple of paragraphs reads, not the policy, but the CAA complaint, reads like a criminal indictment, not a civil claim. The case talks about secret meetings. It talks about unlawful activities and incorporates those early paragraphs into every single cause of action. Can I ask, what is the relevance of those factual allegations? Do we assess coverage based on what the conduct is? We see a lot of, sometimes in the criminal context, we have to apply the categorical rule where we just look at what is the minimum that would be required to establish what are the elements of the claim, essentially. So, do we do it categorically, or do we look at the specific facts? Well, in the last appeal, the court said, basically, allegations determined whether the application of 533 would exist. In this, each and every cause of action contains the allegations that are inherently harmful and intentional, not simply negligent, not simply reckless, but inherently harmful and intentional. But not only that, there's a California Court of Appeal case, the Mentarsi case, which says that if the inherently harmful intentional conduct is inextricably intertwined with potentially negligent or reckless conduct, 533 still applies. Here, every cause of action is inextricably intertwined with the intentional inherently harmful conduct. You can't separate them out. It's all part of the same story, all part of the same causes of action and unlawful conduct. And therefore, it doesn't matter whether you have a negligent misrepresentation or an intentional interference with contractual obligations. It's all part of the same scheme. And if you read the complaint, it's obvious that whether you're dealing with intentional interference of contract or whether you're dealing with breach of fiduciary duty, the one depends upon the others, not simply separate contentions. And you can have a complaint, for example, that breaks down conduct into various categories with different elements and hang independently from other causes of action. That's not the case here. One of the other things that UTA argues is, well, there's no evidence that UTA has any liability or responsibility for what happened. The problem with that is that CAE repeatedly argues that senior management of UTA was inextricably involved with the things that occurred here that were inherently harmful and intentional. They simply can't separate it out. For example, to say that particular members of CAA on their way to UTA delayed meetings with potential clients at CAA is somehow separate from intentional interference with contract makes no sense. They're all hung together. The other thing, of course, is one never understands how UTA can seriously contend that when you bring on a group that large, management didn't have any role in it. Somehow they appeared the day after signing an agreement without the knowledge of senior management. That's simply not factually correct or possible. And so I don't see how they can contend that UTA did not have knowledge and participation. I don't think if they were asked to sign a declaration to the effect that senior management wasn't aware, they couldn't do it. I think that putting all that together, the fact that defense costs are only paid for covered claims, the fact that this is indemnity policy, not the duty to defend policy, the fact that there is an inextricable intertie in between the so-called negligent claims and the intentional claims, the fact that the intentional conduct was incorporated or the allegations into each and every cause of action, the fact that the complaint alleged that senior management, the general counsel's office, CEO wasn't aware. Let me ask you a hypothetical. Sure. So let's assume because as you acknowledge the determination that we're supposed to make and the panel that heard this appeal before us sort of referenced the allegations and the complaints. And so these determinations are really supposed to be made according to the rule that's been set forth by the prior panel based on the allegations and the complaints. So let's assume that you have a case where the allegations are alleged, this willful conduct, and ultimately that is disproven and there's not a settlement but based on the allegations of the willful conduct, that allows an insurer like yourself or your client to disclaim payment of defense costs or to advance defense costs. Would you later have an obligation to pay those if it's determined that the allegations were in fact not provable or did not in fact involve willful conduct? No, because I think, Your Honor, that the policy provides that all we have to do is advance defense costs for covered loss. And it doesn't say that there has to be an adjudication of covered loss. And in fact, if we do advance defense costs because we want out of an abundance of caution to provide it, we're entitled to the extent that there's a determination of the application of 533 to get it back. The policy specifically says we can recover from suit after the event matters which or money which we paid that turned out to be for non-covered loss. And that may be something that a court or a jury ultimately determines, but it doesn't have to because our obligation is only to pay for claims where the allegations are covered, not because there is a determination that the allegations were in fact supported. And what is your answer to the point that your friend made that the definition of loss excludes matters that are uninsurable under the but it says that that does not exclude claim expenses with respect to that category. So I think he's saying that the willful conduct, although excludable under the law from indemnity, is not excluded from the definition of claim expenses. Well, it says we should cover or advance claims expenses for covered loss only. And not for things which may be potentially covered, but things which are in fact covered. And in our view, the allegations of intentional interference contract together with the other allegations which are inextricably intertwined with the intentional inherently harmful allegations precludes the advancement of. So then what is, maybe I'm not sure I'm understanding what that clause in the say provided this does not exclude claim expenses with respect to the following. I think there may be circumstances. There's an allocation provision in the policy as well. And it could well be that there are claims in the policy which are not either intentional inherently harmful or not inextricably intertwined with the others. And we'd have to allocate the And in those cases, there'd be claims expenses which are potentially covered or are covered and claims expenses which are not. And we'd allocate what is covered from what is not covered or potentially covered. And therefore, we would advance the non-intentional inherently harmful claims expenses. And if it's later turned out that they are inherently harmful claims expenses, we have a chance under allocation to get them back. But we don't have to advance claims expenses for things that are clearly non-covered like malicious prosecution. We talked about what would happen under Downey Venture, where the court said the only reason you get claims expenses is because the policy explicitly says, we don't have to, we have to advance for malicious prosecution. And had they not said that, they wouldn't have gotten claims expenses. Yurik says, unless there's specific coverage for a particular matter, you don't get claims expenses. So I don't think you can say that you get claims expenses even if the policy excludes them or the policy doesn't explicitly cover them. So have I answered your question, Your Honor? I didn't know if you wanted to. Yeah, no, I don't have further questions on that point. Okay. And I just don't see how, when they chose to purchase an indemnity policy, as opposed to a claims made defense policy, that they can transform both different kinds of obligation to pay defense costs into the same obligation. It wouldn't make any sense. They pay different premiums for two different policy provisions. They have different rights, different obligations, and they just want to transform it. And that way, by tying the indemnity policy, they get control of the defense, they get control of defense counsel, and now they can say, okay, we had all of that. We paid less, but we'll get the same rights as we would in a duty to defend policy. And I just don't see how they can do that, particularly in a case where there were allegations that were, as I said, basically criminal in nature. Unless Your Honors have any further questions, I would complete my argument. It appears we do not. So, thank you. Thank you. Rebuttal? Mr. Garrett, I think you're still muted. Thank you. Thank you, Your Honors. A couple of points on rebuttal. First, UTA is not seeking to transform the policy into a duty to defend policy. We're simply enforcing the duty to advance defense costs, which again, as I mentioned, is a separate promise. It's not a requirement to pay loss, including claim expenses. There's a separate obligation to advance defense costs on a current basis, prior to any judgment, prior to any settlement. And we're simply seeking to enforce that. And enforcing that provision does not violate any public policy and the rationale behind Section 533. Again, I go back to, both of us have been back to Downey Ventures, but the critical decision of Downey Ventures was that indemnification of a malicious prosecution claim may be precluded by Section 533, quote, that conclusion does not apply to the defense commitment, which in this policy is a specific and distinct commitment. Likewise here, just like the duty to defend in that policy was a separate and distinct commitment, the duty to advance defense costs is also a separate and distinct commitment. And I would ignore the district in Brayden, making that same connection. On the ratification by UTA, simply, Markell has simply pointed to allegations in the complaint and they've pointed to, I think, just factual suppositions, basically. But there's no proof of any ratification by UTA. And this goes back to the DART Industries versus Liberty Mutual Insurance case cited in our briefing. In DART, there was no dispute that the willful actor was an agent of the insured corporation who was the president. There was no dispute that he was acting the course of his employment when he sent the libelous letter. There was evidence that other corporate officials were consulted or aware of the preparation of the libelous letter that was at issue in that case. But nevertheless, the court said there remains a complete absence of proof that the policymaking management of the corporation approved or ratified the conduct. Same issue here. Markell can point to evidence that there's ratification, only supposition and allegations. And in that situation, Section 533 simply does not apply. The last point with a few seconds I have remaining is the reference to URIC. URIC turned on a coverage grant that required an accident. That's not the case here. As the court said, the issue in that case that the court faced was a coverage question rather than an exclusion question. Here, UTA does not need to show an accident. And that's important because it goes back to the reasonable expectations that the courts talked about in Downey and B&E. Here, the underlying actions fall within the policy's coverage grant. Markell doesn't dispute that. The policy says that loss does not include matters uninsurable under the law, like Section 533, but explicitly says it will pay claim expenses with respect to such matters. That's more than a reasonable expectation of coverage in our view. That's an explicit promise. Thank you very much. We thank both counsel for their helpful arguments and the case is submitted. Thank you, Your Honor. This court for this session stands adjourned.
judges: SCHROEDER, MILLER, DESAI